NO. COA14-89

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

IN THE MATTER OF:                           Buncombe County
                                            No. 11 JT 259
N.T.U.,
Minor Child.


        Appeal by respondent from judgment entered 25 September
2013 by Judge Ward D. Scott in Buncombe County District Court.
Heard in the Court of Appeals 11 June 2014.


        *Hanna Frost Honeycutt for petitioner-appellee Buncombe
        County Department of Social Services.*

        *Amanda Armstrong for guardian ad litem.*

        *Jeffrey L. Miller for respondent-appellant.*


        DAVIS, Judge.


        N.U. ("Respondent") appeals from the trial court's
termination of her parental rights as to her son N.T.U.
("Nathan").[1]  On appeal, Respondent argues that (1) the trial
court lacked subject matter jurisdiction to terminate her
parental rights as to Nathan; and (2) there was insufficient

---

[1] The pseudonym "Nathan" is used throughout this opinion to
protect the privacy of the minor child and for ease of reading.
N.C.R. App. P. 3.1(b).

evidence to support either of the trial court's bases for terminating her parental rights. After careful review, we affirm.

## Factual Background

Nathan was born to Respondent and Z.R.[2] in September of 2010 in Greenville, South Carolina. Nathan lived in South Carolina with Respondent until 21 September 2011.

On 21 September 2011, the Buncombe County Department of Social Services ("DSS") received a Child Protective Services report alleging that officers of the Asheville Police Department had arrested Respondent in connection with a bank robbery and homicide that had occurred in South Carolina earlier that day. Respondent was apprehended by law enforcement officers at a motel in Asheville. Nathan, who was one year old at the time, was with Respondent at the motel. Respondent was taken to the Buncombe County Jail.

The following day, DSS filed a juvenile petition alleging that Nathan was a neglected and dependent juvenile and obtained nonsecure custody of Nathan that same day. On 27 September 2011, a seven-day hearing was held on the nonsecure custody

---

[2] Nathan's father, Z.R., did not appeal from the trial court's order terminating his parental rights and, therefore, is not a party to this appeal.

order. Following the hearing, the trial court entered an order on 14 October 2011 continuing nonsecure custody with DSS. In its 14 October 2011 order and in a subsequent order entered 29 November 2011 continuing nonsecure custody with DSS, the trial court acknowledged that South Carolina was Nathan's home state but that the Buncombe County District Court had "temporary emergency jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act" ("UCCJEA").

On 1 December 2011, the trial court held an adjudication hearing and, with the consent of Respondent, adjudicated Nathan to be a neglected and dependent juvenile. In its order, the trial court once again found that although South Carolina was Nathan's home state, the trial court had temporary emergency jurisdiction under the UCCJEA. The trial court ordered that Nathan remain in the custody of DSS.

The trial court conducted permanency planning review hearings during the course of the next year. By order entered 16 October 2012, the court set a permanent plan of guardianship with a concurrent plan of adoption for Nathan. On 12 April 2013, DSS filed a petition to terminate Respondent's parental rights as to Nathan. The termination of parental rights hearing was held on 24 July and 14 August 2013, and on 25 September

2013, the trial court entered an order terminating Respondent's parental rights on the grounds of neglect and incapacity to provide proper care and supervision. Respondent filed a timely notice of appeal.

## Analysis

### I. Subject Matter Jurisdiction

Respondent first contends the Buncombe County District Court lacked subject matter jurisdiction to terminate her parental rights. We disagree.

"Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987). The issue of subject matter jurisdiction may be raised for the first time on appeal. *In re H.L.A.D.*, 184 N.C. App. 381, 385, 646 S.E.2d 425, 429 (2007), *aff'd per curiam*, 362 N.C. 170, 655 S.E.2d 712 (2008). Whether a court possesses jurisdiction is a question of law reviewable *de novo* on appeal. *In re K.U.-S.G.*, 208 N.C. App. 128, 131, 702 S.E.2d 103, 105 (2010).

"In matters arising under the Juvenile Code, the court's subject matter jurisdiction is established by statute." *In re K.J.L.*, 363 N.C. 343, 345, 677 S.E.2d 835, 837 (2009). The

jurisdictional statute governing actions to terminate parental rights is N.C. Gen. Stat. § 7B-1101, which provides as follows:

> The court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion. The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the age of the parent. Provided, that before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201, 50A-203, or 50A-204. *The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the state of residence of the parent. Provided, that before exercising jurisdiction under this Article regarding the parental rights of a nonresident parent, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201 or G.S. 50A-203, without regard to G.S. 50A-204 and that process was served on the nonresident parent pursuant to G.S. 7B-1106.* . . .

N.C. Gen. Stat. § 7B-1101 (2013) (emphasis added).

The above-referenced statutes listed in N.C. Gen. Stat. § 7B-1101 are all provisions of the UCCJEA, which defines a "child-custody determination" as "a judgment, decree, or other order of a court providing for the legal custody, physical

custody, or visitation with respect to a child." N.C. Gen. Stat. § 50A-102(3) (2013). The jurisdictional requirements of the UCCJEA apply to proceedings for the termination of parental rights. *In re N.R.M.*, 165 N.C. App. 294, 298, 598 S.E.2d 147, 149 (2004). Pursuant to N.C. Gen. Stat. § 7B-1101, the trial court must have jurisdiction to make a child-custody determination under the provisions of N.C. Gen. Stat. § 50A-201 or N.C. Gen. Stat. § 50A-203 in order to terminate the parental rights of a nonresident parent. *See* N.C. Gen. Stat. § 7B-1101; *K.U.-S.G.,* 208 N.C. App. at 132, 702 S.E.2d at 106.

N.C. Gen. Stat. § 50A-203 pertains only to the modification of a custody order previously entered by another state. In the present case, no other state has ever entered a custody order as to Nathan and, therefore, N.C. Gen. Stat. § 50A-203 does not apply here. Accordingly, we must determine whether the trial court had jurisdiction to terminate Respondent's rights pursuant to N.C. Gen. Stat. § 50A-201.

N.C. Gen. Stat. § 50A-201 provides:

> (a) Except as otherwise provided in G.S. 50A-204, a court of this State has jurisdiction to make an initial child-custody determination only if:
>
> > (1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home

state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:

    a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

    b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under G.S. 50A-207 or G.S. 50A-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

(b) Subsection (a) is the exclusive

> jurisdictional basis for making a child-custody determination by a court of this State.
>
> (c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

N.C. Gen. Stat. § 50A-201 (2013).

Respondent contends that the trial court could not have properly exercised jurisdiction to terminate her parental rights pursuant to N.C. Gen. Stat. § 50A-201 because it never actually possessed *any* jurisdiction over the custody of Nathan. We disagree.

The trial court noted that it was exercising temporary emergency jurisdiction over Nathan pursuant to N.C. Gen. Stat. § 50A-204(a) when it first entered the initial nonsecure custody orders. N.C. Gen. Stat. § 50A-204 allows a North Carolina court to exercise temporary emergency jurisdiction "if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." N.C. Gen. Stat. § 50A-204(a) (2013).

Respondent argues that the trial court acted without proper temporary emergency jurisdiction because it failed to make findings that Nathan was abandoned or that it was necessary to

exercise jurisdiction to protect Nathan from mistreatment or abuse. However, we have previously held that the statutory bases for jurisdiction set forth in the UCCJEA do *not* require a trial court to make specific findings of fact regarding jurisdiction and that N.C. Gen. Stat. § 50A-204 "states only that certain circumstances must exist, not that the court [must] specifically make findings to that effect . . . ." *In re E.X.J.*, 191 N.C. App. 34, 40, 662 S.E.2d 24, 27-28 (2008) (citation and quotation marks omitted), *aff'd per curiam*, 363 N.C. 9, 672 S.E.2d 19 (2009).

As such, we conclude that the trial court properly entered the initial nonsecure custody orders pursuant to its temporary emergency jurisdiction because the particular circumstances in this case supported emergency jurisdiction. When the trial court entered its 14 October 2011 order continuing nonsecure custody with DSS, Nathan was present in the State and — due to his mother's arrest and subsequent incarceration — left without supervision or any provision for his care. *See* N.C. Gen. Stat. § 50A-102(1) (defining "abandoned" as "left without provision for reasonable and necessary care or supervision"). Indeed, the juvenile petition alleged, and the trial court found, that DSS needed to assume custody of Nathan at that time because

Respondent would be unable to provide care for him and the individual she recommended as a kinship placement had pending criminal charges, including sexual offenses against a child. Thus, we believe the trial court correctly treated Nathan as having been abandoned and that its initial assertion of jurisdiction was proper under N.C. Gen. Stat. § 50A-204.

Therefore, having determined that the trial court properly exercised temporary emergency jurisdiction over the custody of Nathan initially, the sole remaining question is whether the trial court had jurisdiction under N.C. Gen. Stat. § 50A-201 at the time it terminated Respondent's parental rights. Neither before nor after the trial court's entry of the nonsecure custody orders have there been any custody proceedings instituted, or custody orders entered, in any state other than North Carolina. Nathan has lived in North Carolina with his foster parents since September 2011. Therefore, guided by our decision in *E.X.J.*, 191 N.C. App. 34, 662 S.E.2d 24, we conclude that North Carolina became Nathan's home state such that the trial court possessed jurisdiction to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 50A-201(a).

In *E.X.J.*, we held that the trial court properly exercised temporary emergency jurisdiction over the juveniles at issue in

that case in initially placing them with the Rutherford County Department of Social Services ("the Department") because the respondent-mother had traveled from Alabama to North Carolina with the children and then left them with the Department because she felt she was unable to care for them. *Id.* at 39-40, 662 S.E.2d at 27. After the Department obtained custody, the children remained in North Carolina with a parent (or a person acting as a parent) for at least six months before the Department filed the petition to terminate parental rights and no custody orders were entered in any other state during that time. *Id.* at 43, 662 S.E.2d at 29. Consequently, this Court concluded that North Carolina had become the juveniles' home state for purposes of N.C. Gen. Stat. § 50A-201 and that jurisdiction therefore existed to terminate parental rights. *Id.; see* N.C. Gen. Stat. § 50A-102(7) (defining "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding").

The same is true in the present case. Nathan has resided in North Carolina with persons acting as parents (his foster parents) since September 2011. No custody proceedings have been

instituted or custody orders entered in another state during this time — or, indeed, at *any* time. Accordingly, when DSS filed the petition seeking termination of Respondent's parental rights on 12 April 2013, North Carolina had become Nathan's home state and the trial court had jurisdiction under N.C. Gen. Stat. § 50-201(a) to enter its order terminating Respondent's parental rights.

**II. Grounds for Termination of Parental Rights**

Having determined that the trial court had subject matter jurisdiction to adjudicate the issue of whether Respondent's parental rights should be terminated, we now turn to the question of whether the trial court properly terminated those rights. In order to terminate a parent's parental rights, a trial court must find — based on clear, cogent, and convincing evidence — that one or more of the statutory grounds for termination exist. N.C. Gen. Stat. § 7B-1111(a) (2013); *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). We review a court's order terminating parental rights to determine whether the findings of fact are supported by clear, cogent, and convincing evidence and whether the conclusions of law are supported by the findings of fact. *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, *disc. review denied*, 358 N.C. 543,

599 S.E.2d 42 (2004). We review the trial court's conclusions of law *de novo*. *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009).

Here, the trial court made the following pertinent findings of fact:

> 16. On September 21, 2013 [sic], the Buncombe County Department of Social Services ("Department") received a Child Protective Services report alleging that respondent mother was being arrested for serious criminal charges, that the minor child was with her, that her proposed kinship placement was inappropriate and that the minor child would not have a caretaker after the respondent mother's arrest.
>
> 17. SW Jennie Wells initiated the investigation. SW Jennie Wells went to the Sleep Inn Hotel in Asheville, North Carolina. SW Wells found respondent mother, her friend, her brother and the minor child to be present along with law enforcement officers.
>
> 18. Respondent mother had diapers and some clothes for the minor child.
>
> 19. Respondent mother admitted that she was present when her brother shot and killed a man named Sean. The minor child was with a relative during the time Sean was killed by respondent mother's brother.
>
> 20. After the killing, respondent mother separated from her brother and reunited with the minor child.

21. Respondent mother received a text message from her brother telling her to "lay low."

22. Respondent mother later rejoined her brother, along with her friend and the minor child, and left town. Respondent mother, her brother, friend and the minor child traveled in the same car and stayed at various hotels in an attempt to evade law enforcement.

23. While on the run from law enforcement, respondent mother's brother robbed a bank and respondent mother, her friend and the minor child waited in the car while the robbery occurred.

24. Respondent mother did not contact law enforcement at any point in time to report the killing or bank robbery.

25. Respondent mother knew she would be arrested.

26. Respondent mother advised that a relative named [T.D.] was on his way to pick up the child. [T.D.] had charges pending for indecent liberties and lewd act on a child. [T.D.] was respondent mother's first choice for placement of the minor child. Placement with [T.D.] was not approved by the Department for placement [sic] due to his criminal history.

27. Respondent mother did not provide any other options for placement of the minor child.

28. Respondent mother was arrested for murder and robbery charges and was taken to jail. Respondent mother's brother and friend were also arrested.

29.  The Department sought and obtained non-secure custody of the minor child and the non-secure custody order was entered on September 22, 2011.  The minor child has remained in the continuous custody of the Department since that time.

30.  Although respondent mother was initially jailed at the Buncombe County Jail for a period of time, respondent mother was ultimately housed at the Pickens County Jail in South Carolina.

31.  In October of 2011, SW Sumner mailed respondent mother a copy of her case plan, which required respondent mother to provide viable options for kinship placement and to abide by certain conditions for visitation if she was released from jail.

32.  On November 14, 2011, SW Sumner met with respondent mother in the Pickens County Jail.  The respondent mother reported that she had received letters from the social worker, copies of the case plan and the visitation plan.  SW Sumner provided respondent mother with an update on the minor child, reviewed the case plan with respondent mother and reviewed the visitation plan with respondent mother.  At that meeting, respondent mother did not provide any prospective kinship providers.

33.  In December of 2011, the minor child was adjudicated a neglected and dependent child, as defined by N.C.G.S. §§ 7B-101(15) and (9).

34. In July of 2012, respondent mother's attorney provided the names of prospective placements for the minor child, [M.U.] and [T.U.].  Later, SW Sumner was informed that family friend, [J.M.], may also be an option for placement.

35. A request for a home study on [M.U.] was sent to South Carolina through ICPC. The home study was approved by South Carolina. However, subsequent to the approval of his home study, [M.U.] was arrested and incarcerated. Additionally, Child Protective Services became involved with his family. The Court in the underlying juvenile action did not approve [M.U.] for placement of the minor child.

36. A request for a home study on [T.U.] was sent to South Carolina through ICPC. The home study was approved by South Carolina. After the home study of [T.U.] was approved, the Department had a difficult time getting [T.U.] to visit with the minor child so that she could establish a relationship with him. [T.U.] demonstrated that she was not interested in placement with the minor child as she failed to avail herself of opportunities to visit with the minor child even though the Department offered to go to South Carolina so she could visit. [T.U.] physically disciplined a cousin in front of the social worker in a visitation room at DSS. The Court in the underlying juvenile action did not approve [T.U.] for placement of the minor child.

37. A home study was completed on family friend, [J.M.]. The home study was not approved as [J.M.] was convicted of a crime related to crack cocaine, had insufficient housing, along with other reasons. [J.M.] failed to pursue placement of the minor child after SW Sumner's visit. The Court in the underlying juvenile action did not approve [J.M.'s] home for placement of the minor child.

38. Respondent mother has not provided any other possible kinship placement options for

the minor child.

39.   In September of 2012, respondent mother began writing the minor child.  She has sent more than ten letters to the child and/or foster parents.

40.   The minor child is not old enough to read the letters from respondent mother.

41.   Respondent mother's date of release from incarceration is unknown.

42.   Respondent mother's trial dates for robbery and murder are unknown.

43.   The minor child was taken into custody when he was one year old and he is now almost three years old.

44.   The minor child has spent almost 2/3 of his life outside of the care of respondent mother.

45.   The actions of respondent mother invited state intervention.

46.   Respondent mother has not completed any services to improve the conditions which caused the minor child to be removed from her care.

47.   There is no evidence that respondent mother understands the gravity of her past conduct and how her past conduct placed the minor child at risk of harm.

48.   Respondent mother's incarceration has rendered her unable and unavailable to parent the juvenile.

The trial court ultimately found as fact and concluded as a matter of law that:

57. Pursuant to N.C.G.S. § 7B-1111(a)(1), the respondent mother has neglected the minor child, as specified above. There is a high likelihood of a repetition of the neglect if the minor child was returned to the care and control of the respondent mother as the respondent mother has failed to correct those conditions that led to the removal of the minor child from her care and has failed to show any understanding of the gravity of her past conduct or the danger she placed the minor child in due to her past conduct, including running from law enforcement with her brother and the minor child after witnessing her brother kill a man and waiting in the car with the minor child while her brother committed a bank robbery. The respondent mother has not completed any services.

58. Pursuant to N.C.G.S. 7B-1111(a)(6), the respondent mother is incapable of providing for the proper care and supervision of the minor child, such that the minor child is a dependent child within the meaning of G.S. 7B-101, and there is a reasonable probability that such incapacity will continue for the foreseeable future. The respondent mother's incapability is the result of incarceration. The respondent mother has no appropriate, alternative child care arrangements for the juvenile.

Respondent challenges all or portions of findings 27, 32, 34-37, 46-47, and 57-58 as unsupported by the evidence. She also contends that these findings were insufficient to support the trial court's conclusion that grounds existed to terminate her parental rights.

In termination of parental rights proceedings, the trial court's "finding of any one of the . . . enumerated grounds is sufficient to support a termination." *In re J.M.W.*, 179 N.C. App. 788, 791, 635 S.E.2d 916, 918-19 (2006) (citation and quotation marks omitted). Thus, on appeal, if we determine that any one of the statutory grounds enumerated in § 7B-1111(a) is supported by findings of fact based on competent evidence, we need not address the remaining grounds. *In re D.H.H.*, 208 N.C. App. 549, 552, 703 S.E.2d 803, 805-06 (2010).

It is well settled that findings of fact made by the trial court in a termination of parental rights proceeding are binding "where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984). Findings of fact are also binding if they are not challenged on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Moreover, if such findings sufficiently support one ground for termination, this Court need not address a respondent's challenges to findings of fact that support alternate grounds for termination. *See In re J.L.H.*, ___ N.C. App. ___, ___, n. 3, 741 S.E.2d 333, 335, n. 3 (2012) (noting that although respondent challenged additional findings of fact,

this Court was not required to address those arguments because "they [were] not relevant" to the particular ground that supported the trial court's termination of parental rights).

In the present case, the trial court concluded that Respondent's parental rights were subject to termination under N.C. Gen. Stat. § 7B-1111(a)(6), which permits the termination of rights if

> the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-1111(a)(6).

Specifically, the trial court concluded that (1) Respondent was incapable of providing care for Nathan because of her incarceration; and (2) Respondent had "no appropriate, alternative child care arrangements for [Nathan]." We believe that the evidence presented at the hearing and the findings of fact based on that evidence support the trial court's conclusion that Respondent is incapable of providing for the care and

supervision of Nathan, that this incapacity will continue for the foreseeable future, and that Respondent failed to provide any viable alternative child care arrangements.

The unchallenged findings show that Respondent has been continuously incarcerated since September 2011 awaiting trial on charges stemming from two separate incidents — a homicide and a bank robbery. During that time and due to her incarceration, Respondent has been personally incapable of providing proper care and supervision of her child, and nothing in the record indicates that she will be released from incarceration in the foreseeable future. Respondent argues that her inability to care for Nathan during her incarceration is an insufficient basis for termination of her parental rights because (1) the trial court did not make a specific finding as to the expected duration of her incarceration; and (2) Respondent's incarceration could, in theory, end at any time. We are not persuaded.

We note that "[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re P.L.P.*, 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005) (citation and quotation marks omitted), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006). As such, while a

parent's imprisonment is relevant to the trial court's determination of whether a statutory ground for termination exists, it is not determinative. *See id.*

Termination of parental rights based upon N.C. Gen. Stat. § 7B-1111(a)(6) does not require that the parent's incapability be permanent or that its duration be precisely known. Instead, this ground for termination merely requires that "there is a *reasonable probability* that such incapability will continue for the foreseeable future." N.C. Gen. Stat. § 7B-1111(a)(6) (emphasis added). Given that (1) Respondent has been held on charges relating to homicide and bank robbery since September 2011 and has not yet received a trial date; and (2) no evidence was presented giving rise to any expectation of her release from incarceration in the foreseeable future, we cannot conclude that the trial court erred in determining that there is a reasonable probability that Respondent's incapability would continue for the foreseeable future.

Respondent next challenges the trial court's determination that she lacked appropriate alternative child care arrangements for Nathan. The record indicates that Respondent provided DSS with three possible placements for Nathan: her sister, T.U.; her brother, M.U.; and her friend, J.M. DSS had concerns regarding

placing Nathan with T.U. after witnessing T.U. physically discipline another child in the DSS visitation room. While a home study was approved for T.U. and T.U. sought placement of Nathan with her, she was not ultimately approved for placement by the trial court based — at least in part — on the ground that she "demonstrated that she was not interested" in Nathan's placement with her by declining opportunities to get to know Nathan through visitation. M.U. was initially approved for placement, but the trial court ultimately determined that he was not an appropriate alternative caregiver because he was incarcerated following his approval by DSS, requiring the Child Protective Services division in South Carolina to become involved with his own children. Finally, Respondent's friend, J.M., was not approved for placement because of a prior crack cocaine conviction and DSS's concerns regarding her housing. As such, Respondent's three proposed caretakers for Nathan were deemed unsuitable, supporting the trial court's determination that Respondent lacked appropriate alternative child care arrangements.

Accordingly, we affirm the trial court's order terminating Respondent's parental rights. Because we conclude that the trial court did not err in terminating Respondent's parental

rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), it is unnecessary to address her arguments regarding neglect — the other ground for termination found by the trial court. *P.L.P.*, 173 N.C. App. at 8, 618 S.E.2d at 246 ("[W]here the trial court finds multiple grounds on which to base a termination of parental rights, and an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds." (citation and internal quotation marks omitted)).

## Conclusion

For the reasons stated above, we affirm the trial court's order terminating Respondent's parental rights.

AFFIRMED.

Judges CALABRIA and STROUD concur.