IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-453

No. COA21-760

Filed 16 August 2022

Robeson County, No. 19 JT 173

IN THE MATTER OF:  H.B.

Appeal by respondent-mother from order entered 19 August 2021 by Judge

Vanessa E. Burton in Robeson County District Court.  Heard in the Court of Appeals

10 May 2022.

*J. Edward Yeager, Jr., for the petitioner-appellee Robeson County Department of Social Services.*

*Benjamin J. Kull for the respondent-appellant mother.*

*North Carolina Administrative Office of the Courts, by Matthew D. Wunsche, for the Guardian ad Litem.*

ARROWOOD, Judge.

Respondent-mother ("mother") appeals from the trial court's order terminating

her parental rights with respect to the minor child, "H.B."[1]  For the following reasons,

we affirm the trial court.

---

[1] Initials are used throughout to protect the identity of the minor child.

## I.     Background

H.B. was born on 13 March 2015.   On the same day, the Robeson County Department of Social Services ("DSS") received a Child Protective Services report ("CPS report") "alleging neglect due to substance abuse."   On 30 April 2015, "a staffing decision was made for services not recommended and the case was closed." Two other CPS reports followed throughout the years regarding mother's care for H.B., both of which were swiftly closed via staffing decisions.

On 1 May 2019, DSS received a CPS report "alleging substance abuse" when mother gave birth to H.B.'s younger brother, "A.L.,"[2] who was born premature at 27 weeks and whose "meconium tested positive for cocaine and marijuana."   DSS also learned that A.L. was transferred "from Scotland Memorial Hospital to North East Hospital in Concord, North Carolina"; that mother did not have her own residence, but lived with her grandmother; that mother "did not have any supplies for" A.L.; that mother had not visited A.L. while he was hospitalized; that, according to mother, "a home assessment could not be completed at her residence because other people living in the residence had issues"; that H.B.'s father was deceased; and that H.B. lived with her paternal grandmother ("Ms. Bullard").   Mother admitted to DSS that "she smoked marijuana, but denied cocaine use."   However, mother then admitted to

---

[2] *See* footnote 1, *supra*.

using "cocaine once 'due to [A.L.'s father] beating and knocking on her[.]' " Mother agreed to complete a substance abuse assessment.

¶ 4        On 14 May 2019, an employee with "Premier Behavioral" informed DSS that mother "was receiving services through Premier" and "would be attending substance abuse classes"; however, mother "had not completed a substance abuse assessment at this time due to not having active Medicaid in Robeson County."

¶ 5        On 16 May 2019, DSS made a home visit at Ms. Bullard's home. There, DSS observed H.B.'s paternal great-grandmother, who was also present, "yell for [H.B.] to come from behind the home to meet with [DSS,]" as well as "several children in the yard cussing, playing with cross bows, and throwing bricks."

¶ 6        On 23 May 2019, DSS "attempted to transport [mother] to the child and family team meeting, but [mother] did not make herself available." "While in [mother]'s neighborhood," the DSS social worker assigned to mother's case "saw [mother] walking down a trail and called out to her multiple times, but [mother] ignored worker's attempts and got out of worker's sight."

¶ 7        On 6 June 2019, DSS made another home visit to Ms. Bullard's home. "Ms. Bullard had to yell for [H.B.] outside the residence in order to locate her so [H.B.] could come in the home to visit with [DSS]." DSS learned that H.B. had lived with Ms. Bullard "for much of her life[,]" and that mother "gives Ms. Bullard a little money and sometimes buys [H.B.] some clothes, but not on a consistent basis."

¶ 8        On the same day, mother informed DSS that she had last used cocaine the previous week.  Mother was living "in a mobile home with no electricity" at the time.  Mother also admitted "to being diagnosed with bi-polar disorder and is not currently receiving services for her mental health."

¶ 9        On 8 June 2019, DSS had "a discussion" with Ms. Bullard regarding her "supervision of her grandchildren."  Specifically, the DSS social worker assigned to mother's case informed Ms. Bullard that she had "observed the children playing in the road[,]" that there was no adult supervising the children, and that the social worker had once "had to completely stop her car to avoid hitting a small female child," whom she later learned was H.B. herself.  On 10 June 2019, DSS learned that mother had "only attended two classes . . . at Premier Behavioral and that [she] was not compliant."

¶ 10        DSS filed a juvenile petition on 11 June 2019, alleging that H.B. was neglected, due to her living "in an environment injurious to [her] welfare[,]" and dependent, due to her need of "assistance or placement because [she] has no parent, guardian, or custodian responsible for [her] care or supervision."  The trial court returned an order for nonsecure custody for H.B., as well as A.L., on the same day, scheduling a hearing for continued nonsecure custody for the following day.  The trial court rendered orders for the continued placement of H.B. and A.L. in the nonsecure custody of DSS on

12 June 2019 and then again on 26 June 2019, both of which were filed on 15 August 2019.

¶ 11    On 24 July 2019, mother entered into a "Family Services Agreement[,]" in which she "agreed to address housing, employment, parenting, to complete a Mental Health assessment, and a Substance Abuse assessment."

¶ 12    The matters came on for adjudication and disposition on 12 September 2019. On adjudication, after making findings of fact consistent with the above facts, the trial court concluded that H.B. and A.L. were neglected pursuant to N.C. Gen. Stat. § 7B-101(15) and ordered for both children to remain in the legal custody of DSS pending disposition. On disposition, the trial court found that both H.B. and A.L. had been placed in a licensed foster home. The trial court also found that mother had not made herself available to DSS to develop "a Family Services Case Plan" and that DSS had been unable to contact mother since 20 August 2019. The trial court then stated it relied on and accepted into evidence DSS's "Court Report" and "Family Reunification Assessment," "the North Carolina Permanency Planning Review & Family Services Agreement," and the Guardian ad Litem's "Court Report[.]"

¶ 13    The trial court concluded that it was "in the best interest of the children that their custody remain[ ] with [DSS]" and that DSS "continue to work on efforts of reunification in this matter." Accordingly, the trial court ordered for the legal and physical custody of H.B. and A.L. to remain with DSS, for DSS to continue to work

on reunification efforts, and for DSS to "develop a plan" with Ms. Bullard. Both orders on adjudication and disposition were filed on 23 October 2019.

¶ 14        On 25 March 2020, the trial court filed a review hearing order, ordering for H.B. and A.L. to remain in the custody of DSS. Following a hearing held on 14 May 2020, the trial court entered a permanency planning order, providing for the continued custody of H.B. and A.L. with DSS, and setting the primary plan for reunification with a concurrent plan for adoption. The trial court also noted that there was an open investigation at the time involving Ms. Bullard, "due to another child in her care testing positive for cocaine." Pending the results from this investigation, H.B. was to be placed back into Ms. Bullard's home.

¶ 15        Following a 10 June 2020 hearing, the trial court entered another permanency planning order on 1 July 2020, in which it found that H.B. had been adjudicated neglected in 2019, that mother had failed to make herself available to DSS, follow through on her Family Services Case Plan, or visit H.B. and A.L. consistently, that DSS was investigating Ms. Bullard, and that the child in Ms. Bullard's care who had tested positive for cocaine no longer resided with her. Then the trial court ordered, among other things, that H.B. remain in DSS's custody, that H.B. be placed back into Ms. Bullard's home, that mother's visitation with her children be "reduced to once a month" with a 48-hour notice requirement, and that DSS pursue termination of mother's parental rights with respect to A.L.

¶ 16          H.B. was once again removed from Ms. Bullard's home on 8 July 2020, where she was found "outside unsupervised with a black eye, and was also dirty." "A CPS referral was called on Ms. Bullard and Scotland County DSS substantiated injurious environment on Ms. Bullard." On 11 March 2021, mother's parental rights with respect to A.L. were officially terminated.

¶ 17          DSS filed a petition for termination of parental rights with respect to H.B. on 5 April 2021. DSS alleged, in pertinent part, the following:

> 3.    The child, [H.B.,] is currently residing in a licensed foster home, under the supervision, direction and custody of [DSS].
>
> 4.    The child, [H.B.], is currently in the custody of [DSS], pursuant to a Non-Secure Custody Order entered on June 11, 2019.
>
> 5.    That on [September 12, 2019],[3] the Court adjudicated the child, [H.B.,] as a neglected juvenile in accordance with N.C.G.S. 7B-101 (15).
>
> . . . .
>
> 11.   The parental rights of the Respondent mother . . . is [sic] subject to termination by the Court pursuant to N.C.G.S[.] 7B-111 in that:
>
>       a.    The mother has willfully left the minor child in placement outside of the home for more than twelve (12) months without showing to the satisfaction of the court that reasonable progress

---

[3] As illustrated in paragraph 22 of this opinion, DSS's petition was amended during the termination hearing because it had erroneously listed "September 18, 2019" as the date of the adjudication hearing.

under the circumstances has been made in correcting the conditions that led to the child's removal in that the mother failed to comply with her family services case plan; and

b.  The mother has neglected the child within the meaning of N.C.G.S[.] 7B-101, pursuant to the prior adjudication of neglect in the underlying juvenile court file; and

c.  The mother has willfully failed to pay a reasonable portion of the costs of the child's care for a continuous period of six months immediately preceding the filing of the petition, although physically and financially able to do so.

. . . .

13.  The Respondent Mother . . . is subject to termination of her parental rights pursuant to N.C.G.S. 7B-1111.

. . . .

15.  Termination of Respondent's parental rights is in the best interest and welfare of the minor child.

¶ 18      DSS included as exhibits H.B.'s birth certificate, the permanency planning order filed 1 July 2020, an affidavit of status as to H.B., and an additional, extensive affidavit detailing DSS's dealings with mother since H.B.'s birth.  The second affidavit, particularly, consisted of a 14-page, 156-paragraph, detailed timeline of events beginning on 13 March 2015, when DSS made its first contact with mother, through 11 March 2021, when, among other things, the trial court ordered for H.B.'s primary plan to be shifted to adoption with a concurrent plan of reunification.  This

timeline captures, in addition to the forementioned facts, mother's repeated failure to present herself to visitations conducted at DSS and DSS's multiple, failed attempts to reach mother either in-person or over the phone.

¶ 19 The matter came on for termination hearing on 28 July 2021, following a pre-trial order entered 1 July 2021. The trial court heard testimony from DSS foster care social worker Lataysha Carmichael ("Ms. Carmichael") during the adjudication phase, and then from adoption social worker Chandra McKoy ("Ms. McKoy") and Guardian ad Litem District Administrator Amy Hall ("Ms. Hall") during disposition.

¶ 20 Ms. Carmichael testified that DSS "initially got involved with [H.B.]" due to a "referral" following A.L.'s diagnosis as "substance affected" at birth, and that H.B. had been "in care since June of 2019." Ms. Carmichael testified that mother had not "done anything to complete a plan that would reunite the family" nor "paid any reasonable portion of the costs associated with the care for the child in the period of the six months prior to filing this petition[.]"

¶ 21 Ms. Carmichael stated that, between June 2019 and March 2021, mother never provided DSS proof of having submitted herself to a substance abuse assessment, of having acquired suitable housing of her own, or of being employed. Ms. Carmichael also stated that mother had made "a verbal communication to [her] that she was attending Positive Progress" for mental health and parenting services; however, when Ms. Carmichael spoke with "Positive Progress," she learned that it

"had no record of [mother]." Ms. Carmichael stated that mother had not consistently presented herself to visitations at DSS.

¶ 22 Following Ms. Carmichael's testimony, counsel for DSS moved to amend its petition to reflect that the date of the adjudication hearing was 12 September 2019, and not 18 September 2019, as was originally provided in the petition. The trial court granted DSS's motion without objection.

¶ 23 The trial court made its oral rendition on adjudication, stating, in pertinent part:

> The Court further finds that this matter came before the Court on a petition for neglect; that the minor was found and adjudicated a neglected juvenile on September 12, 2019, as a result of improper care and substance abuse issues as determined by the Court on said date; that the minor has been in custody of [DSS].
>
> The Court further finds that the mother had a care plan, failed to complete the care plan, failed to make any payments for the costs of the care of the minor child, failed to make any efforts to improve her status so that the child could be removed from the custody of [DSS].
>
> . . . .
>
> Court further finds that this juvenile has been in at least on three occasions in the care of at least two separate parties: July 8, 2020, until now in the care of [foster parents] Arthur and Jessie Kelly; June 10, 2020, until July 7, 2020, the care of [Ms.] Bullard; and June the 11th, 2019, through June 9, 2020, in the care again of Arthur and Jessie Kelly.
>
> The Court has taken judicial notice of the file, reviewed the

> exhibits admitted today, A, B, C and D, adopts the efforts
> made by [DSS] not to proceed in a motion for termination
> of parental rights.

Specifically, DSS's Exhibits A, B, C, and D were the same four exhibits DSS had included in its petition for termination of parental rights: H.B.'s birth certificate, the permanency planning order filed 1 July 2020, an affidavit of status as to H.B., and the 14-page affidavit.

The trial court continued:

> Further finding that the juvenile has been outside of the mother's home for more than 12 months without any showing of any reasonable efforts of the mother to change those circumstances, again, based upon the inaction of the mother, that the juvenile was a neglected child.

> Court finds that there is sufficient evidence to proceed and find that it's in the best interest and welfare of the minor child that the parental rights be terminated and we proceed to disposition at this point.

At disposition, Ms. McKoy testified that she had been assigned to mother's case in March 2021, "once . . . the focus was shifted to adoption[.]" Ms. McKoy stated that mother had "initiated services at several providers[,]" but "hasn't followed through." According to Ms. McKoy, mother "was supposed to be getting a job at Waffle House," which "f[e]ll through[,]" and was "currently living with her boyfriend." Ms. McKoy testified that H.B. was doing "very well" in her "prospective adoptive placement."

Lastly, Ms. Hall asked the trial court to find that grounds existed by which to terminate mother's parental rights, that said grounds were "proven by clear, cogent[,]

and convincing evidence," that termination of mother's parental rights was in the best interest of H.B., that H.B. should remain in the "legal physical custody" of DSS, that visitation should be terminated, and that DSS should "continue with the plan of adoption . . . ."

The trial court made its oral rendition on disposition, stating, in pertinent part:

> That the mother was assigned a case plan requiring her to work several services, that she failed to do so and complete any service;
>
> That the mother did not follow through with providers and that mother specifically admits that the most recent providers . . . indicated they couldn't work with her because she had failed to continue previously with their services when she signed up.
>
> The Court finds that there is not a significant relationship with the child and parent because the parent has not cared for the child, has failed to visit consistently with the child during the time that the child was in the care and legal custody of [DSS].
>
> The Court finds that the child has a bond and a relationship with the prospective adoptive parents, has been living with them for essentially two years;
>
> That the mother . . . has previously been before [DSS] on an additional . . . petition for termination of parental rights which was granted; that the minor child [A.L.] resides in the home that . . . [H.B.] currently lives in and so they are biological siblings living together.
>
> . . . .
>
> The Court further finds that the period of time that [H.B.] has been separated from her mother and unknown father,

based upon the past neglect and the likelihood of repetition of that neglect, based upon the history of the mother and her care or lack of care for her children, as well as the fact that the mother was willing to allow her child to remain in the custody of [DSS] without working her plan or making any progress, reasonable progress, to correct her situation so that the child could be returned back to her;

The Court finds that today there has not been any change in the circumstances except for the mother continues with the pattern at the last minute during a hearing suggesting that there is an alternative but her history of failing to follow through, the Court finds that any efforts at this point would not be in the best interest of the minor child [H.B.].

The Court finds that the lack of progress by [mother] was willful and that she had the ability at a minimum to participate in the counseling services set up by [DSS] and to work her plan but she failed to do so, and it was by her own inaction that the child remained in the custody of [DSS].

As a result, the Court finds that it is in the best interest of the minor child [H.B.] that the petition for the termination of parental rights be granted; that the legal and physical custody of [H.B.] will remain with [DSS] continuing with the plan of adoption; terminate any visitation with the biological mother . . . .

¶ 28 The trial court entered a signed, written order on 19 August 2021. The trial court made the following findings of fact with respect to H.B. and mother:

*Based on the evidence* presented by the parties, as well as *review of the Court record*, the Court makes the following findings, *based on clear, cogent and convincing evidence*:

1.  The name of the juvenile is [H.B.], as evidenced by the child's Birth Certificate attached to the filed Petition, which is to be made part of this paragraph as if fully

set forth herein.

2. The child, [H.B.], currently resides in a licensed foster home, under the supervision, direction and custody of [DSS].

3. . . . . [Mother] was served with a copy of the Petition to Terminate Parental Rights on April 8, 2021. [Mother] had notice of this proceeding today.

. . . .

5. That a Juvenile Petition and Non-Secure Custody Order were filed regarding the minor child, on June 11, 2019.

6. On September 12, 2019, the Court adjudicated the child, [H.B.], as a neglected juvenile pursuant to N.C.G.S. 7B-101 (15).

7. *That the Court takes judicial notice of the underlying Juvenile File 19JA173* and [DSS]'s efforts to work with the Respondent mother . . . .

8. The mother . . . has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. There is a high likelihood that the neglect would continue.

10.[4] The mother . . . has neglected the juvenile in that the juvenile lives in an environment injurious to the juveniles' [sic] welfare.

11. The mother . . . failed to pay a reasonable portion of

---

[4] The trial court's order skips number 9 in its list of findings of fact.

> the costs of the children's [sic] care for a continuous period of six months immediately preceding the filing of the petition, although physically and financially able to do so.
>
> 12. The parental rights with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home.
>
> . . . .
>
> 14. As such, and *based on clear, cogent and convincing evidence*, grounds exist to terminate the parental rights of the Respondent mother . . . .
>
> 15. The Court *relies on and accepts into evidence the Timeline*, marked DSS Exhibit '__" [sic], in making these findings and finds the said report to both [sic] credible and reliable.

(Emphasis added.)

¶ 29        DSS's "Timeline" noted in paragraph 15 of the trial court's findings consisted of a two-page, 18-paragraph timeline of events beginning 1 March 2021, when mother's case was assigned to Ms. McKoy, through 19 July 2021, nine days before the termination of parental rights hearing. This timeline illustrated, among other things, the following:  that mother had completed a mental health assessment in January 2021, but, as of 2 March 2021, had failed to present herself to a follow-up appointment "to begin services"; that mother had repeatedly failed to present herself for scheduled visits in April 2021; that during a "PPR meeting" held on 3 June 2021, for which mother was absent, the "[t]eam recommended to continue with plan of

adoption, continue to monitor placement and continue to pursue" termination of parental rights; that on 9 June 2021 mother had reported being "clean for 8 days"; that mother failed to show up on 15 June 2021 for a substance and mental health assessment; that mother had failed to show up for family visits on 7 and 19 July 2021; and that on 19 July 2021 mother informed Ms. McKoy over the phone that she had yet to secure employment.

¶ 30        The trial court concluded that grounds existed to terminate mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111, stating:

> a.  The juvenile has been placed in the custody of [DSS] for a continuous period of six months next preceding the filing of the Petition, and
>
> b.  *The Respondent mother . . . has willfully left the child in the legal and physical custody of* [DSS] *from June 11, 2019 until the present, for over 12 months* without making reasonable progress to correct the conditions that led to the removal of the child; and
>
> c.  The Respondent mother . . . has neglected the juvenile in that the juvenile live[s] in an environment injurious to the juveniles' [sic] welfare; and
>
> d.  The Respondent mother . . . has willfully failed to pay a reasonable portion of the costs of the child's care for a continuous period of six months immediately preceding the filing of the petition, although physically and financially able to do so; and
>
> e.  The parental rights of the parnet [sic] with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a

safe home . . . .

(Emphasis added.)

¶ 31        On disposition, the trial court made the following findings of fact by clear,

cogent, and convincing evidence:

> 1.  That grounds for termination of parental rights exist
>     under N.C.G.S. 7B-1111, et seq. and it is in the best
>     interest of the minor child that the parental rights of
>     the child's mother . . . should be terminated.
>
> . . . .
>
> 3.  The minor child has been in the care of [DSS] since
>     June 11, 2019.
>
> 4.  At the time the child . . . came into care, [she was] four
>     years old.  Today, the child . . . is six years old.
>
> 5.  The minor child, [H.B.], is currently residing in a
>     licensed foster home of Arthur and Jessie Kelly and
>     said placement is appropriate.  The child . . . is doing
>     well in the home of Arthur and Jessie Kelly and the
>     child is thriving in their home.  The child . . . is very
>     well bonded to Arthur and Jessie Kelly and she calls
>     them "mama and daddy".
>
> 6.  The permanent plan for this child is adoption.
>
> 7.  Based on the foregoing, the likelihood of adoption is
>     extremely high.
>
> 8.  That there is no bond between the minor child and the
>     Respondent mother . . . .
>
> 9.  That Termination of Parental Rights of the
>     Respondent mother . . . and the Respondent unknown
>     father will help achieve the permanent plan for the
>     minor child . . . .

> 10. The Court relies on and accepts into evidence the GAL Report, marked Exhibit "A", in making these findings and finds the said report to be both credible and reliable.

The trial court ordered for the termination of mother's parental rights and all visitation with respect to H.B. Mother filed notice of appeal on 15 September 2021.

## II. Discussion

On appeal, mother argues that: the trial court erred by allowing "a mid-hearing motion to amend the termination petition to add a claim under N.C. Gen. Stat. § 7B-1111(a)(9)"; the trial court erred by making "no substantive findings of fact to support any of the termination grounds"; and the trial court abused its discretion "by basing its best interest determination on an unsupported finding of fact regarding the parent-child bond." We first address whether the trial court's findings of fact were sufficient to support its conclusions of law.

### A. Adjudication

"We review a trial court's adjudication to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re J.S.*, 377 N.C. 73, 2021-NCSC-28, ¶ 16 (citation and quotation marks omitted). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *Id.* (citation and quotation marks omitted). "The trial court's findings of fact that are supported by

clear, cogent, and convincing evidence are deemed conclusive even when some evidence supports contrary findings." *In re D.D.M.*, 2022-NCSC-34, ¶ 9 (citation omitted).

"In termination of parental rights proceedings, the trial court's finding of *any* one of the . . . enumerated grounds is sufficient to support a termination." *In re N.T.U.*, 234 N.C. App. 722, 733, 760 S.E.2d 49, 57 (2014) (citation and quotation marks omitted) (emphasis added). "Thus, on appeal, if we determine that any one of the statutory grounds enumerated in § 7B-1111(a) is supported by findings of fact based on competent evidence, we need not address the remaining grounds." *Id.* (citation omitted). Accordingly, we limit our review to N.C. Gen. Stat. § 7B-1111(a)(2) ("subsection (a)(2)").

Under subsection (a)(2), a trial court "may terminate the parental rights upon a finding" that:

> [t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.

N.C. Gen. Stat. § 7B-1111(a)(2) (2021).

"[A] trial court may take judicial notice of findings of fact made in prior orders . . . because where a judge sits without a jury, the trial court is presumed to

have disregarded any incompetent evidence and relied upon the competent evidence." *In re A.C.*, 2021-NCSC-91, ¶ 17 (citation omitted). "On the other hand, however, the trial court may not rely solely on prior court orders and reports and must, instead, receive some oral testimony at the hearing and make an independent determination regarding the evidence presented." *Id.* (citation and quotation marks omitted).

¶ 38        Mother does not dispute any of the trial court's findings of fact—including, namely, the finding that H.B. spent more than twelve months outside of mother's home and care. Although the trial court's findings are bare-boned and disordered, the trial court clearly identifies the grounds upon which to terminate mother's parental rights pursuant to subsection (a)(2): that mother "has willfully left [H.B.] in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of [H.B.]."

¶ 39        The trial court also makes a purported conclusion of law, which is better characterized as a finding of fact, in paragraph 3, subsection b, that reads: "The Respondent mother . . . has *willfully left the child in the legal and physical custody of* [*DSS*] *from June 11, 2019 until the present*, for over 12 months without making reasonable progress to correct the conditions that led to the removal of the child[.]" (Emphasis added.) *See Dunevant v. Dunevant*, 142 N.C. App. 169, 173, 542 S.E.2d 242, 245 (2001) ("Findings of fact are statements of what happened in space and

time. . . . [A] pronouncement by the trial court which does not require the employment of legal principles will be treated as a finding of fact, regardless of how it is denominated in the court's order." (citations and quotation marks omitted)).

¶ 40    The trial court took judicial notice "of the underlying Juvenile File 19JA173 and [DSS]'s efforts to work with Respondent mother," "relie[d] and accept[ed] into evidence the Timeline" submitted by DSS, and heard testimony from DSS social worker Ms. Carmichael, foster care social worker Ms. McKoy, and Guardian ad Litem District Administrator Ms. Hall. *See In re A.C.*, ¶ 18 ("Although the trial court did take judicial notice of the record in the underlying neglect and dependency proceeding and incorporated 'that file and any findings of fact therefrom within the [adjudication] order,' it did not rely solely upon these materials in determining that respondent-mother's parental rights in Arty were subject to termination. Instead, the trial court also received oral testimony during the termination hearing . . . ." (alteration in original)).

¶ 41    As we observed above, the "underlying Juvenile File 19JA173, by its very nature, provides a thorough illustration of DSS's dealings with mother from H.B.'s birth, culminating in the permanency planning order on 12 May 2021, by which the trial court allowed DSS to "focus its efforts on the plan of adoption" for H.B.  DSS's "Timeline" depicted DSS's dealings from March through mid-July 2019, detailing mother's repeated failure to follow through on her appointments and scheduled visits,

all the while H.B. continued to live outside of mother's care. Witness testimony at the termination hearing corroborated the evidence provided by "the underlying Juvenile File" and DSS's "Timeline[.]"

All of this evidence taken together showed exactly what the trial court found, and more: that mother had willfully left [H.B.,]" who was six years old by the time of the termination hearing, "in the legal and physical custody of [DSS] from June 11, 2019 until the present[ ] for over 12 months"; that H.B. had already spent most of her life living outside of mother's care, either in the precarious home of Ms. Bullard or in foster placement, by the time DSS became involved with the family; that H.B.'s living arrangements had been "injurious" to her welfare; that mother had "willfully failed to pay a reasonable portion of the costs of the child's care for a continuous period of six months immediately preceding the filing of the petition"; that H.B. had been adjudicated neglected; that mother's "parental rights with respect to another child[,]" A.L., "ha[d] been terminated involuntarily"; that mother "lacks the ability or willingness to establish a safe home"; that mother had repeatedly failed to follow through on her case plan; that DSS had repeatedly attempted to make contact with mother; and that mother had not made any progress toward bringing H.B. back into her care.

Though the trial court's findings of fact are unartfully drafted, this is not a close case. Furthermore, the fact that the trial court's oral rendition and written

order do not precisely mirror each other is of no moment. *See Oltmanns v. Oltmanns*, 241 N.C. App. 326, 330, 773 S.E.2d 347, 351 (2015) ("Although the written entry of judgment is the controlling event for purposes of appellate review, rendition is not irrelevant. . . . . A trial court has an affirmative duty to enter a written order reflecting any judgment which has been orally rendered; failure to enter a written order deprives the parties of the ability to have appellate review." (citation omitted)). The order sufficiently, albeit minimally, supports the trial court's conclusion that mother's parental rights with respect to H.B. should be terminated pursuant to subsection (a)(2).

## B.    Disposition

"The [trial] court's assessment of a juvenile's best interest at the dispositional stage is reviewed only for abuse of discretion." *In re C.S.*, 380 N.C. 709, 2022-NCSC-33, ¶ 13 (citation and quotation marks omitted) (alteration in original). "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citation and quotation marks omitted) (alteration in original).

Per N.C. Gen. Stat. § 7B-1110,

> [a]fter an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-

1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2021).

¶ 46     "Although the statute requires the trial court to consider each of the statutory factors, the trial court is only required to make written findings regarding those factors that are relevant." *In re C.S.*, ¶ 19 (citation omitted). "A factor is relevant if there is conflicting evidence concerning that factor." *Id.* (citation omitted). "If supported by the evidence received during the termination hearing or not specifically challenged on appeal, the trial court's dispositional findings are binding on appeal." *Id.* (citation omitted)

¶ 47        Mother argues the trial court abused its discretion because it "found that 'there is no bond between'" H.B. and herself.  Specifically, mother states that the trial court "based its ultimate best interest determination on the flawed belief that there was 'no bond' of any kind between [mother] and [H.B.]" and that, "[b]y basing such a critical determination on such a clearly flawed belief, the [trial] court necessarily abused its discretion."  Because mother only challenges the trial court's finding of a lack of bond, all other findings are binding.  *See id.*

¶ 48        First, as is apparent from N.C. Gen. Stat. § 7B-1110, mother's argument that the finding of the presence of a parental bond is a dispositive factor on disposition is unsupported by law.  *See In re A.H.F.S.*, 375 N.C. 503, 514, 850 S.E.2d 308, 317-18 (2020) ("[A]lthough the trial court found that Charley was strongly bonded to respondents, this Court has recognized that the bond between parent and child is just one of the factors to be considered under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give greater weight to other factors." (citation and quotation marks omitted)).

¶ 49        Indeed, the Guardian ad Litem's court report ("GAL report") stated:  "Even though [H.B.] has been in foster care for over two years, she still has a bond with her mother.  She loves and misses her."  The GAL report also provided that H.B. was doing very well in her foster placement, that she was bonded to her foster parents, that likelihood for adoption was excellent, that she was living with her sibling A.L.

in the same foster placement, that A.L. also had a plan for adoption, that mother's parental rights as to A.L. had been terminated by the same trial court on 11 March 2021, and that mother had "signed a case plan on 7/24/19 agreeing to address substance use, mental health, parenting, housing and employment[,]" on which she had "failed to make any progress" for about two years. Accordingly, the GAL report recommended that the trial court find that it was in H.B.'s best interests to terminate mother's parental rights.

¶ 50        The trial court's written findings of fact stated that there was no bond between H.B. and mother. The trial court provided more context to this finding during its oral rendition, stating: "The Court finds that there is not a significant relationship with the child and parent because the parent has not cared for the child, has failed to visit consistently with the child during the time that the child was in the care and legal custody of [DSS]." Not only is this reasoning supported by the record, the GAL report, and other evidence, but it is also not inconsistent with how our appellate courts have accepted a finding of a lack of bond between respondent-parent and child. *See, e.g.*, *In re K.A.M.A.*, 379 N.C. 424, 2021-NCSC-152, ¶ 16 ("Due to respondent's failure to visit, Kenneth had no bond with respondent."); *In re C.J.C.*, 374 N.C. 42, 47, 839 S.E.2d 742, 746 (2020) ("[T]he Respondent/father has been minimally involved even prior to the filing of this Petition. Therefore, he essentially has no bond at all with the child.").

The record shows that the trial court sufficiently considered and made findings of fact, bolstered by the GAL report, regarding the multiple, required factors set out by N.C. Gen. Stat. § 7B-1110, namely: H.B.'s age, her high likelihood of adoption, her lack of bond with mother, that termination of mother's parental rights should aid in the accomplishment of H.B.'s adoption, and the good relationship between H.B. and her prospective adoptive parents. *See* N.C. Gen. Stat. § 7B-1110(a). Accordingly, we hold the trial court did not abuse its discretion.[5]

## III.  Conclusion

For the foregoing reasons, we affirm the trial court's termination of mother's parental rights.

AFFIRMED.

Judge INMAN concurs.

Judge WOOD dissents by separate opinion.

---

[5] Mother's additional contention, that the trial court erred by allowing DSS to amend its petition mid-hearing, is of no moment. The amendment at issue did not deprive mother of notice of possible ground for termination, but rather allowed the petition to correct a minor error and reflect the evidence. *See In re B.L.H.*, 190 N.C. App. 142, 147, 660 S.E.2d 255, 258, ("[W]here a respondent lacks notice of a possible ground for termination, it is error for the trial court to conclude such a ground exists." (citations omitted)), *aff'd*, 362 N.C. 674, 669 S.E.2d 320 (2008). Furthermore, mother did not object to DSS's motion. Accordingly, we find that this was not reversible error.

No. COA21-760 – In re: H.B.

WOOD, Judge, dissenting.

The trial court failed to make the necessary, substantive findings of fact to support its conclusions of law that grounds existed under N.C. Gen. Stat. § 7B-1111 to terminate Mother's parental rights to H.B. The order of the trial court should be vacated and remanded for the trial court to make further findings of fact to support its conclusions of law that grounds existed to terminate Mother's parental rights. I respectfully dissent.

## I. Factual and Procedural Background

On August 19, 2021, the trial court entered an order terminating Mother's parental rights to H.B. In the adjudication, the trial court made 14 findings of fact:

> 1. The name of the juvenile is . . . [H.B.], as evidenced by the child's Birth Certificate attached to the filed Petition, which is to be made part of this paragraph as if fully set forth herein.
>
> 2. The child, . . . [H.B.], currently resides in a licensed foster home, under the supervision, direction and custody of the Robeson County Department of Social Services.
>
> 3. The mother of the child is . . . [Mother]. . . . [Mother] was served with a copy of the Petition to Terminate Parental Rights on April 8, 2021. . . . [Mother] had notice of this proceeding today.

4. That there is no father listed on the child's birth certificate. That an unknown father was served by process of publication.

5. That a Juvenile Petition and Non-Secure Custody Order were filed regarding the minor child, on June 11, 2019.

6. On September 12, 2019, the Court adjudicated the child, . . . [H.B.], as a neglected juvenile pursuant to N.C.G.S. 7B-101 (15).

7. That the Court takes judicial notice of the underlying Juvenile File 19JA173 and the Department's efforts to work with the Respondent mother[] . . . the Respondent Unknown father of the child, . . . [A.L.].

8. The mother, . . . [Mother] has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. There is a high likelihood that the neglect would continue.

10. [sic] The mother, . . . [Mother] has neglected the juvenile in that the juvenile lives in an environment injurious to the juveniles' welfare.

11. The mother, . . . [Mother, failed to pay a reasonable portion of the costs of the children's care for a continuous period of six months immediately preceding the filing of the petition, although physically and financially able to do so.

12. The parental rights with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home.

13. That the unknown father, has willfully left the child in foster care for more than twelve months without showing

to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting the conditions that led to the child's removal; has failed to file an affidavit of paternity in a central registry maintained by the Department of Health and Humans Services; legitimated the juvenile pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose; legitimated the juvenile by marriage to the mother of the juvenile; has not provided substantial financial support or consistent care with respect to the juvenile and mother; has not established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.

14. As such, and based on clear, cogent and convincing evidence, grounds exist to terminate the parental rights of the Respondent mother[] . . . and the Respondent unknown father.

15. The Court relies on and accepts into evidence the Timeline, marked DSS Exhibit '__", [sic] in making these findings and finds the said report to [sic] both credible and reliable.

¶ 55 Additionally, the trial court made 10 findings of fact in the dispositional portion of its order. One of these findings, finding of fact number 8, stated, "[t]hat there is no bond between the minor child and the Respondent mother." The trial court then terminated Mother's parental rights to H.B. Mother filed a timely notice of appeal.

## II. Standard of Review

¶ 56 A proceeding to terminate parental rights consists of two stages, an adjudicatory stage followed by a dispositional stage. *In re A.A.M.*, 379 N.C. 167, 2021-NCSC-129, ¶ 14; *Bolick v. Brizendine (In re D.R.B.)*, 182 N.C. App. 733, 735, 643

S.E.2d 77, 79 (2007). At the adjudicatory stage, the petitioner must show by "clear, cogent, and convincing evidence" "any ground for termination alleged under N.C.G.S. § 7B-1111(a)" exists. *In re A.A.M.*, at ¶ 14 (citing N.C. Gen. Stat. § 7B-1109(e)-(f) (2019)). During this stage, "the trial court must 'take evidence, find the facts, and . . . adjudicate the existence or nonexistence of any of the circumstances set forth in [N.C.G.S. §] 7B-1111 which authorize the termination of parental rights of the respondent.'" *In re B.O.A.*, 372 N.C. 372, 379-80, 831 S.E.2d 305, 310 (2019) (quoting N.C. Gen. Stat. § 7B-1109(e)). If a petitioner successfully shows the existence of any of the enumerated grounds under N.C. Gen. Stat. § 7B-1111, the trial court then proceeds to the dispositional stage. *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5 (2004). At the dispositional stage, the trial court must determine "whether it is in the best interests of the child to terminate the parental rights." *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 615 (1997) (citation omitted); *see In re N.C.E.*, 379 N.C. 283, 2021-NCSC-141, ¶ 12.

¶ 57        On appeal, our appellate courts must determine whether the trial court's findings of fact are supported by "clear and convincing evidence," *In re W.K.*, 376 N.C. 269, 277, 852 S.E.2d 83, 89-90 (2020), and "whether those findings support the trial court's conclusions of law." *In re B.O.A.*, 372 N.C. at 379, 831 S.E.2d at 310 (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)); *see In re Shepard*, 162 N.C. App. at 221, 591 S.E.2d at 6. "The issue of whether a trial court's findings of fact

support its conclusions of law is reviewed de novo." *In re J.S.*, 374 N.C. 811, 814, 845 S.E.2d 66, 71 (2020). We review the trial court's determination at the dispositional stage as to the child's best interest for abuse of discretion. *In re N.C.E.*, 379 N.C. 283, 2021-NCSC-141 ¶ 13. "Under this standard, we defer to the trial court's decision unless it is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* (internal quotation marks omitted) (quoting *In re J.J.B.*, 374 N.C. 787, 791, 845 S.E.2d 1, 4 (2020)).

## III.    Discussion

### A. Substantive Findings of Fact

Mother asserts the trial court made no substantive finding of fact to support its ultimate conclusions of law that four separate grounds exited under N.C. Gen. Stat. § 7B-1111 to terminate her parental rights to H.B. I agree.

In an adjudicatory hearing for termination of parental rights, the trial court must "take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of the respondent." N.C. Gen. Stat. § 7B-1109(e) (2021). As the majority opinion above explains, "[i]n termination of parental rights proceedings, the trial court's 'finding of any one of the . . . enumerated grounds is sufficient to support a termination.' " *In re N.T.U.*, 234 N.C. App. 722, 733, 760 S.E.2d 49, 57 (2014) (quoting *In re J.M.W.*, 179 N.C. App. 788, 791, 635 S.E.2d 916, 918-19 (2006)).

Notwithstanding this, when entering its judgment to terminate parental rights, the trial court must 1) "find the facts *specifically*," 2) "state separately its conclusions of law thereon," and 3) "direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A-1, R. 52(a)(1) (emphasis added); *see In re Anderson*, 151 N.C. App. 94, 96, 564 S.E.2d 599, 601-02 (2002); *Quick v. Quick*, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982), *superseded by statute on other grounds*, N.C. Gen. Stat. § 50-13.4(f)(9) (2021).

¶ 60      In other words, "the trial court's factual findings must be more than a recitation of allegations. They must be the '*specific* ultimate facts . . . sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence.' " *In re Anderson*, 151 N.C. App. at 97, 564 S.E.2d at 602 (emphasis added) (quoting *Montgomery v. Montgomery*, 32 N.C. App. 154, 156-57, 231 S.E.2d 26, 28 (1977)); *see In the Matter of: B.F.N. and C.L.N.*, 2022-NCSC-68, ¶ 15 ("The trial court is under a duty to find the facts specially and state separately its conclusions of law thereon, regardless of whether the court is granting or denying a petition to terminate parental rights."). "Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts." *Id.* (quotation omitted); *see Quick*, 305 N.C. at 451, 290 S.E.2d at 657 ("[A] proper finding of facts requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment.").

In *In re Anderson*, we addressed the interplay between an adjudication order, N.C. Gen. Stat. § 7B-1109, and Rule 52. There, the respondent contended the trial court erred by concluding grounds existed under N.C. Gen. Stat. § 7B-1111 to terminate his parental rights. *In re Anderson*, 151 N.C. App. at 96, 564 S.E.2d at 601. On appeal, we reviewed the trial court's order on adjudication and found it only possessed three findings of fact. *Id.* at 97, 564 S.E.2d at 602. We concluded these findings of fact were insufficient because "[t]wo merely recite[d] that DSS filed a petition and that service was proper on [the parties]" and the third finding of fact was a "mere recitation[] of allegations." *Id.* We further held "[e]ven if the factual findings here did not merely recite allegations, they remain insufficient to support the conclusions of law that grounds exist for termination." *Id.*

Notably, the majority's opinion discusses the trial court's oral adjudication of H.B.; however, a trial court's oral adjudication at trial does not constitute a judgment. *See Dabbondanza v. Hansley*, 249 N.C. App. 18, 21, 791 S.E.2d 116, 119 (2016); *Spears v. Spears*, 245 N.C. App. 260, 286, 784 S.E.2d 485, 502 (2016) ("The announcement of an order in court merely constitutes rendition of the order, not its entry."). In its oral adjudication, the trial court included DSS's exhibits A, B, C, and D which was comprised of H.B.'s birth certificate, the July 1, 2020 permanency planning order, an affidavit status of H.B., and an affidavit prepared by DSS. Notwithstanding, this oral rendition is not a final order as it was not "reduced to

writing, signed by the judge, and filed with the clerk of court." N.C. Gen. Stat. § 1A-1, R.58. Even if a trial court enters an oral ruling, "a trial court's oral findings are subject to change before the final written order is entered." *In re E.D.H.*, 2022-NCSC-70, ¶ 19 (quoting *In re A.U.D.*, 373 N.C. 3, 9-10 (2019); *see In re L.G.A.*, 277 N.C. App. 46, 54, 2021-NCCOA-137, ¶ 22 ("[T]he written, signed, and filed order may not have exactly the same provisions as announced at the conclusion of the hearing."). While the trial court is "not required to make detailed findings of fact in open court," *In re T.M.*, 180 N.C. App. 539, 549, 638 S.E.2d 236, 242 (2006), the same is not true for written orders. After the trial court enters an oral rendition, it is the responsibility of the trial court to ensure that the written order comports to the findings and rulings of the trial court, regardless of whom drafts the written order.

¶ 63          Here, the court made numerous oral findings that were not contained in the written order; however, since the trial court retains the authority to change its ruling prior to entry of the written order, we cannot presume that the trial court was still confident in its finding made during its oral rendition at the time the written order was signed and filed. Upon review, then, we cannot mend the trial court's shortcomings in drafting the order with our own investigation of that court's previous statements. Because the trial court's oral adjudication is not a judgment, this Court's review must be limited to the trial court's written order for the purpose of this appeal. *See id.*; *Spears*, 245 N.C. App. at 286, 784 S.E.2d at 502; *Oltmanns v. Oltmanns*, 241

N.C. App. 326, 330, 773 S.E.2d 347, 351 (2015).

¶ 64          Here, the majority's opinion concludes,

> [T]he trial court clearly identifies the grounds upon which
> to terminate mother's parental rights pursuant to
> subsection (a)(2): that mother "has willfully left [H.B.] in
> foster care or placement outside the home for more than 12
> months without showing to the satisfaction of the court
> that reasonable progress under the circumstances has been
> made in correcting those conditions which led to the
> removal of [H.B.]."

By so concluding, the majority disregards the trial court's failure to "find the facts"

specifically, and thus has failed to fulfil its fact-finding duty. The first six findings of

fact merely recite the juvenile's name, location of the child's current residence, that

service was proper upon Mother and father, that DSS filed a petition and non-secure

custody order, and that H.B. was adjudicated neglected. *See In re Anderson*, 151 N.C.

App. at 97, 564 S.E.2d at 602. These first six findings are not "ultimate facts required

by Rule 52(a) to support the trial court's conclusions of law, but rather are mere

recitations of" the jurisdictional posture of the trial court and procedure of this case.

*Id.* (internal quotation marks omitted). Although finding of fact number 7 found by

the trial court took judicial notice of the underlying case file, it fails to make a specific

ultimate finding of fact. *See id.*; *Quick*, 305 N.C. at 451, 290 S.E.2d at 657.

¶ 65          Moreover, findings of fact numbers 8, 10, 11, and 12 are mere recitations of the

statutory language of N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (9). N.C. Gen. Stat. § 7B-

1111 provides,

> [t]he court may terminate the parental rights upon a finding of one or more of the following:
>
> (1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101. [*See* N.C. Gen. Stat. § 7B-101(15)(e) (2021) (stating a juvenile is neglected when the caretaker "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare").]
>
> (2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
>
> (3) The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
>
>  . . .
>
> (9) The parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home.

N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (9) (2021).

¶ 66        Finding of fact number 8 mirrors the language of N.C. Gen. Stat. § 7B-1111(a)(2), stating

> [t]he mother, . . . [Mother], has willfully left the child in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.  There is a high likelihood that the neglect would continue.

Likewise, finding of fact number 10 copies the language of N.C. Gen. Stat. §§ 7B-1111 and 7B-101(15)(e), providing, "[t]he mother, . . . [Mother] has neglected the juvenile and the juvenile lives in an environment injurious to the juveniles' welfare."  Finding of fact number 11 also copies the language of N.C. Gen. Stat. § 7B-1111(a)(3), stating, "[t]he mother, . . . [Mother] failed to pay a reasonable portion of the costs of the children's care for a continuous period of six months immediately preceding the filing of the petition, although physically and financially able to do so."  Finally, finding of fact number 12 is a recitation of N.C. Gen. Stat. § 7B-1111(a)(9): "The parental rights with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home."

¶ 67        Because findings of fact numbers 8, 10, 11, and 12 are merely recitations of the statutory language of N.C. Gen. Stat. § 7B-1111, the trial court failed to "find the facts specifically."  N.C. Gen. Stat. § 1A-1, R. 52(a)(1).  In other words, by copying the

statutory language of N.C. Gen. Stat. § 7B-1111, these findings of facts are not ultimate findings of fact because they are not "the final resulting effect reached by processes of logical reasoning from the evidentiary facts." *In re Anderson*, 151 N.C. App. at 97, 564 S.E.2d at 602 (quotation omitted). Therefore, findings of fact numbers 8, 10, 11, and 12 are insufficient to support the trial court's judgment.

¶ 68 Finally, findings of fact numbers 13, 14, and 15 are also insufficient to support the termination of Mother's rights to H.B. Finding of fact number 13 concerns the unknown father and thus is not applicable to Mother. Finding of fact number 14 is more properly categorized as a conclusion of law than a finding of fact. A conclusion of law is "any determination requiring the exercise of judgment, or the application of legal principles." *China Grove 152, LLC v. Town of China Grove*, 242 N.C. App. 1, 6, 773 S.E.2d 566, 569 (2015) (*In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997)). Finding of fact number 14 provides, "[a]s such, and based on clear, cogent and convincing evidence, grounds exist to terminate the parental rights of the Respondent mother[] . . . and the Respondent unknown father." This determination requires the trial court judge to exercise her judgment and determine "clear, cogent and convincing" evidence existed so as to terminate Mother's rights to H.B. Accordingly, although finding of fact number 14 is labeled as a finding of fact, it is "more properly classified [as] a conclusion of law." *In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675. Lastly, finding of fact number 15 states "[t]he Court relies on and

accepts into evidence the Timeline, marked DSS Exhibit '__', [sic] in making these findings and finds the said report to be [sic] both credible and reliable." This finding does not state what information in the Timeline the trial court relied on and fails to identify for this court what the DSS Exhibit's identification number is.

¶ 69        Based on the foregoing, the trial court's findings of fact were wholly insufficient for an appellate court to determine "whether the trial court correctly exercised its function to find facts and apply the law thereto." *In the Matter of: B.F.N. and C.L.N.*, at ¶ 15 (quotation omitted). Although the majority notes "the trial court's findings are bare-boned and disordered," their subsequent affirmation of the trial court's judgment disregards the trial court's duty to make specific findings of facts. This duty is not to be taken lightly, especially in a case such as the one *sub judice* where a parent's constitutional right to his or her child is involved. The trial court erred by failing to make specific findings of fact in this case to support its termination of Mother's parental rights to H.B. Thus, I would vacate and remand the judgment of the trial court for further findings of fact.

## B. Best Interests at Disposition

¶ 70        Mother contends the disposition's finding of fact number 8 is not supported by competent evidence, and thus the trial court abused its discretion by basing its best interest determination on this fact. This finding provides, "there is no bond between the minor child and the Respondent mother." After a careful review of the record,

there is no evidence in the record to support this finding of fact. Rather, DSS' witness at the hearing, Chandra McKoy, testified H.B. recognized Mother and appeared happy to see her when visits did occur. Furthermore, the guardian ad litem's report to the court reported "[e]ven though . . . [H.B.] has been in foster care for over two years, she still has a bond with her mother. She loves and misses her."

¶ 71 Despite this testimony and guardian ad litem report, the majority concludes the trial court nonetheless scraped together additional considerations to support the trial court's inability to find a sufficient bond between mother and child. The trial court could have inferred a lack of bond, the majority argues, from other passages within the guardian ad litem's report. These passages show that H.B. was adapting well to foster care, that Mother's parental rights as to another child had already been terminated, and that Mother was not progressing well with drug rehabilitation. While these observations may have been true and useful for other factual findings, none support the finding at issue. The lack of a mother's bond with her child cannot reasonably be determined from evidence that merely shows the child is doing well in foster care, the mother's rights as to another child have already been adjudicated, or the mother struggles with substance abuse.

¶ 72 The majority cites to other cases where we have upheld orders finding a lack of bond between parent and child. In all of these cases, though, the trial court relied upon evidence related to the parent-child relationship to arrive at its finding. In *In*

*re K.A.M.A.*, the trial court based its finding upon "the lack of visits" from the parent. 379 N.C. 424, 2021-NCSC-152, ¶ 16. In *In re C.J.C.*, the trial court based its finding upon the parent being "minimally involved." 374 N.C. 42, 47, 839 S.E.2d 742, 746 (2020). In this case, no such evidence of the lack of parent-child relationship is present. These cases are thus distinguishable.

¶ 73 Instead, we should look to cases like *In re R.G.L.* where our Supreme Court held that

> although there is no testimony specifically concerning the bond between respondent and Robert, contrary to finding of fact 55 that there was "absolutely no bond at all between [Robert] and his parents," the social worker testified a bond existed "between the child and mom." We hold the evidence does not support the challenged portions of findings of fact 32 and 55.

¶ 74 379 N.C. 452, 2021-NCSC-155, ¶ 28. Similarly, the social worker in this case testified that Mother's visitations went well and the guardian ad litem's report explicitly states that there existed a bond between Mother and H.B. As such, the trial court here erred by making finding of fact number 8 as the evidence does not support the challenged finding of fact.

**C. Additional Ground for Termination**

¶ 75 Mother next argues the trial court committed reversible error by allowing DSS to amend the petition and add a claim under N.C. Gen. Stat. § 7B-1111(a)(9) during the termination hearing. *See* N.C. Gen. Stat. § 7B-1111(a)(9) (2021) ("The parental

rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home."). This court has repeatedly held a trial court may not grant a motion to amend a petition to terminate a parent's parental rights during a termination hearing. *In re G.B.R.*, 220 N.C. App. 309, 314, 725 S.E.2d 387, 390 (2012); *In re B.L.H.*, 190 N.C. App. 142, 146, 660 S.E.2d 255, 257 (2008), *aff'd per curiam,* 362 N.C. 674, 669 S.E.2d 320 (2008). As such, the trial court erred by allowing such amendment.

## IV.    Conclusion

Our appellate case law and Rule 52 of North Carolina Civil Procedure requires a trial court to make specific findings of fact. The trial court made no substantive findings of fact in this case. Without specific findings of fact to support the trial court's conclusions of law that grounds existed to terminate Mother's parental right to H.B. under N.C. Gen. Stat. § 7B-1111, we are left with insufficient facts from which to determine whether the trial court's judgment is adequately supported by competent evidence. As such, the trial court failed to fulfill its fact-finding duty. Thus, the judgment of the trial court should be vacated and remanded for further findings of fact, and I respectfully dissent.